**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**GREENEVILLE DIVISION**

| | |
|---|---|
| MARIO GARCIA,<br><br>on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>FORWARD AIR CORPORATION,<br>a Tennessee corporation,<br><br>     Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Mario Garcia ("Plaintiff") brings this Class Action Complaint against Forward Air Corporation ("Defendant"), individually and on behalf of all others similarly situated ("Class Members"), and alleges, upon personal knowledge as to his own actions and his counsels' investigations, and upon information and belief as to all other matters, as follows:

### I. INTRODUCTION

1.    Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard personal identifiable information that Defendant required from its current and former employees as a condition of employment, including names, addresses, dates of birth, Social Security numbers, driver's license numbers, passport numbers, and/or bank account numbers (collectively, "personal identifiable information" or "PII").

2.    According to its website, "[s]ince 1990, Forward Air has been a leading provider of ground transportation and related logistics services to the North American air freight and expedited [less-than-truckload] market."[1]  "The Forward Air network is designed with over 90

---

[1] *See* https://www.forwardair.com/about (last visited Nov. 10, 2021).

1

facilities located at or near major U.S. and Canadian airports, 12 regional sort centers and over 300 beyond points (secondary airports provided through our Complete Cartage service), creating one of the most comprehensive linehaul networks in the industry."[2]

3.      On or before December 15, 2020, Defendant learned that a breach of Defendant's computer systems had occurred and that it involved ransomware (the "Data Breach").

4.      Defendant determined that the Data Breach involved unauthorized access to its computer systems in November and early December 2020, including unauthorized access to information about more than 40,655 current or former employees of Defendant.

5.      On or around September 24, 2021, more than nine months after it learned of the Data Breach, Defendant began notifying various states Attorneys General of the Data Breach.

6.      On or around September 24, 2021, more than nine months after it learned of the Data Breach, Defendant began notifying Plaintiff and Class Members of the Data Breach.

7.      By obtaining, collecting, using, and deriving a benefit from the PII of Plaintiff and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion.  Defendant admits that the unencrypted PII potentially viewed and/or taken by an unknown actor include names, addresses, dates of birth, Social Security numbers, driver's license numbers, passport numbers, and/or bank account numbers.

8.      The exposed PII of Plaintiff and Class Members can be sold on the dark web. Hackers can access and then offer for sale the unencrypted, unredacted PII to criminals.  Plaintiff and Class Members now face a lifetime risk of identity theft, which is heightened here by the loss of Social Security numbers.

_____

[2] *Id.*

9. This PII was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect the PII of Plaintiff and Class Members. In addition to Defendant's failure to prevent the Data Breach, after discovering the breach, Defendant waited several months to report it to the states' Attorneys General and affected individuals. Defendant has also purposefully maintained secret the specific vulnerabilities and root causes of the breach and has not informed Plaintiff and Class Members of that information.

10. As a result of this delayed response, Plaintiff and Class Members had no idea their PII had been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their respective lifetimes.

11. Plaintiff brings this action on behalf of all persons whose PII was compromised as a result of Defendant's failure to: (i) adequately protect the PII of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing protected PII using reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct amounts to negligence and violates federal and state statutes.

12. Plaintiff and Class Members have suffered injury as a result of Defendant's conduct. These injuries include: (i) lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; and (iv) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendant's

3

possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

13.     Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that the PII of Plaintiff and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As the result, the PII of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## II. PARTIES

14.     Plaintiff Mario Garcia is a citizen of California residing in Los Angeles County, California.

15.     Defendant Forward Air Corporation is a corporation organized under the laws of Tennessee, headquartered at 1915 Snapps Ferry Rd. Bldg. N, Greeneville, Tennessee with its principal place of business in Greeneville, Tennessee.

16.     The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff.  Plaintiff will seek leave of court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

17.     All of Plaintiff's claims stated herein are asserted against Defendant and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

4

### III. JURISDICTION AND VENUE

18.     This Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one Class Member is a citizen of a state different from Defendant to establish minimal diversity. This Court also has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

19.     The Eastern District of Tennessee has personal jurisdiction over Defendant named in this action because Defendant and/or its parents or affiliates are headquartered in this District and Defendant conducts substantial business in Tennessee and this District through its headquarters, offices, parents, and affiliates.

20.     Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant and/or its parents or affiliates are headquartered in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

### IV. FACTUAL ALLEGATIONS

*Background*

21.     Plaintiff and Class Members employed by Defendant were required to provide Defendant sensitive and confidential information for themselves and their beneficiaries and dependents, including names, Social Security numbers, dates of birth, and other personal identifiable information, which includes information that is static, does not change, and can be used to commit myriad financial crimes.

22.     Plaintiff and Class Members, as current and former employees and their beneficiaries and dependents, relied on this sophisticated Defendant to keep their PII confidential

5

and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members demand security to safeguard their PII.

23.     Defendant had a duty to adopt reasonable measures to protect the PII of Plaintiff and Class Members from involuntary disclosure to third parties.

### The Data Breach

24.     On or about September 24, 2021, Defendant sent Plaintiff and other Class Members a *Notice of Data Breach*.[3]  Defendant informed Plaintiff and other Class Members that:

> **What Happened?** On December 15, 2020, Forward Air learned of suspicious activity occurring within certain company computer systems. Forward Air immediately launched an investigation to determine the nature and scope of the incident. The investigation determined that certain Forward Air systems were accessible in November and early December 2020, and that certain data, which may have included your personal information, was potentially viewed or taken by an unknown actor.

> **What Information Was Involved?** On or about July 30, 2021, we determined that your name, address, date of birth, Social Security number, driver's license number, passport number, or bank account number were potentially viewed and/or taken by an unknown actor. At this time, there is no indication that anyone's information has been subject to actual or attempted misuse.

> Nevertheless, we are notifying you because your information was stored on our systems.

> **What We Are Doing.** The confidentiality, privacy, and security of information entrusted to us are among our highest priorities, and we take this incident very seriously. As part of our ongoing commitment to information security, we are reviewing our existing policies and procedures regarding data privacy and are evaluating additional measures and safeguards to protect against this type of incident in the future. In addition to notifying you, we will also be notifying state regulators, as required.

---

[3] Exhibit 1, Notice of Data Breach sent to Plaintiff.

As a safeguard, we have arranged for you to enroll, at no cost to you, in an online credit monitoring service (myTrueIdentity) for 12 months provided by TransUnion Interactive, a subsidiary of TransUnion®, one of the three nationwide credit reporting companies.[4]

25.     On or about March 4, 2021, Defendant notified various state Attorneys General, including Maine's Attorney General, of the Data Breach. Defendant also provided the Attorneys General with "sample" notices of the Data Breach that state the information exposed in the Data Breach includes names, addresses, dates of birth, Social Security numbers, driver's license numbers, passport numbers, and/or bank account numbers.[5]

26.     Defendant admitted in the *Notice of Data Breach*, the letters to the Attorneys General, and the "sample" notices of the Data Breach that unauthorized third persons potentially viewed and/or took sensitive information about Defendant's current and former employees and their beneficiaries and dependents, including names, addresses, dates of birth, Social Security numbers, driver's license numbers, passport numbers, and/or bank account numbers.

27.     In response to the Data Breach, Defendant claims that "[a]s part of our ongoing commitment to information security, we are reviewing our existing policies and procedures regarding data privacy and are evaluating additional measures and safeguards to protect against this type of incident in the future."[6] However, the details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure a breach does not occur again have not been shared with regulators or Plaintiff and Class Members, who retain a vested interest in ensuring that their information remains protected.

---

[4] *Id*. at 1.

[5] Exhibit 2, Letter from Defendant to Maine Attorney General.

[6] Exhibit 1.

28.     The unencrypted PII of Plaintiff and Class Members may end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed PII for targeted marketing without the approval of Plaintiff and Class Members.  Unauthorized individuals can easily access the PII of Plaintiff and Class Members.

29.     Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining for Plaintiff and Class Members, causing the exposure of PII for more than 40,000 individuals.

30.     As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[7]

31.     To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program.  Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

---

[7] *See* How to Protect Your Networks from RANSOMWARE, at 3, *available at* https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited Nov. 22, 2021).

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[8]

32.    To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer**.  Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….

- **Use caution with links and when entering website addresses**.  Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on,

---

[8] *Id*. at 3-4.

9

as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net)….

- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Keep your personal information safe**.  Check a website's security to ensure the information you submit is encrypted before you provide it….

- **Verify email senders**.  If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**.  Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic….[9]

33.     To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

-        Apply latest security updates
-        Use threat and vulnerability management
-        Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**

-        Prioritize and treat commodity malware infections as potential full compromise;

---

[9] *See* Security Tip (ST19-001) Protecting Against Ransomware (original release date Apr. 11, 2019), *available at* https://us-cert.cisa.gov/ncas/tips/ST19-001 (last visited Nov. 22, 2021).

**Include IT Pros in security discussions**

-    Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**

-    Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords

**Apply principle of least-privilege**

-    Monitor for adversarial activities
-    Hunt for brute force attempts
-    Monitor for cleanup of Event Logs
-    Analyze logon events

**Harden infrastructure**

-    Use Windows Defender Firewall
-    Enable tamper protection
-    Enable cloud-delivered protection
-    Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[10]

34.    Given that Defendant was storing the PII of more than 40,000 individuals, Defendant could and should have implemented all of the above measures to prevent and detect ransomware attacks.

35.    The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent ransomware attacks, resulting in the Data Breach and the exposure of the PII of more than 40,000 individuals, including Plaintiff and Class Members.

---

[10] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last visited Nov. 22, 2021).

*Defendant Acquires, Collects, and Stores the PII of Plaintiff and Class Members.*

36.     Defendant acquired, collected, and stored the PII of Plaintiff and Class Members.

37.     As a condition of maintaining employment with Defendant, Defendant requires that its employees entrust Defendant with highly confidential PII.

38.     By obtaining, collecting, and storing the PII of Plaintiff and Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the PII from disclosure.

39.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

*Securing PII and Preventing Breaches*

40.     Defendant could have prevented this Data Breach by properly securing and encrypting the files and file servers containing the PII of Plaintiff and Class Members. Alternatively, Defendant could have destroyed the data, especially decade-old data from former employees and their beneficiaries and dependents.

41.     Defendant's negligence in safeguarding the PII of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

42.     Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

43.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud

12

committed or attempted using the identifying information of another person without authority."[11] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[12]

44.     The ramifications of Defendant's failure to keep secure the PII of Plaintiff and Class Members are long lasting and severe. Once PII is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims may continue for years.

### *Value of Personal Identifiable Information*

45.     The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[13] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[14] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[15]

---

[11] 17 C.F.R. § 248.201 (2013).

[12] *Id*.

[13] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed Nov. 22, 2021).

[14] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed Nov. 22, 2021).

[15] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed Nov. 22, 2021).

13

46. Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[16]

47. What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

48. Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[17]

---

[16] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed Nov. 22, 2021).

[17] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last accessed Nov. 22, 2021).

14

49.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts.  The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—Social Security number, name, and date of birth, and potentially government-issued ID number, mother's maiden name, birth certificate, and biometric information.

50.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[18]

51.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

52.     The fraudulent activity resulting from the Data Breach may not come to light for years.

53.     There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from

---

[18] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed Nov. 22, 2021).

15

data breaches cannot necessarily rule out all future harm.[19]

54.    At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiff and Class Members, including Social Security numbers and dates of birth, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

55.    Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

56.    Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's file servers, amounting to potentially tens or hundreds of thousands of individuals' detailed, personal information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

57.    To date, Defendant has offered Plaintiff and Class Members only one year of credit monitoring through a single credit bureau, TransUnion. The offered service is inadequate to protect Plaintiff and Class Members from the threats they face for years to come, particularly in light of the PII at issue here.

58.    The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII of Plaintiff and Class Members.

---

[19] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* https://www.gao.gov/assets/gao-07-737.pdf (last accessed Nov. 22, 2021).

16

*Plaintiff's Experience*

59.     Between 2009 and 2015, Plaintiff worked for Defendant or its subsidiary in Carson, California. As a condition of employment, Defendant required that he provide and/or entrust his PII, including his name, Social Security number, and date of birth.

60.     Plaintiff received Defendant's Notice of Data Breach, dated September 24, 2021, on or about that date.  The notice stated that Plaintiff's Social Security number and date of birth may have been exposed.

61.     As a result of the Data Breach notice, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach and self-monitoring his accounts. This time has been lost forever and cannot be recaptured.

62.     Additionally, Plaintiff is very careful about sharing his sensitive PII. He has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

63.     Plaintiff stores any documents containing his sensitive PII in a safe and secure location or destroys the documents. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

64.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PII—a form of intangible property that Plaintiff entrusted to Defendant for the purpose of his employment, which was compromised in and as a result of the Data Breach.

65.     Plaintiff suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy.

66.     Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII, especially his Social

17

Security number, in combination with his name and date of birth, being placed in the hands of unauthorized third parties and possibly criminals.

67.     Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

## V. CLASS ALLEGATIONS

68.     Plaintiff brings this nationwide class action on behalf of themselves and on behalf of all others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

69.     The Nationwide Class that Plaintiff seek to represent is defined as follows:

> All individuals whose PII was potentially viewed and/or taken in the data breach that is the subject of the Notice of Data Breach that Defendant sent to Plaintiff and other Class Members on or around September 24, 2021 (the "Nationwide Class").

70.     Pursuant to Rule 23, and in the alternative to claims asserted on behalf of the Nationwide Class, Plaintiff asserts claims on behalf of a separate subclass, defined as follows:

> All individuals who reside in California and whose PII was viewed and/or taken in the data breach that is the subject of the Notice of Data Breach that Defendant sent to Plaintiff and other Class Members on or around September 24, 2021 (the "California Class").

71.     Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this

18

litigation, as well as their immediate family members.

72.    Plaintiff reserves the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

73.    <u>Numerosity</u>, Fed R. Civ. P. 23(a)(1): The Nationwide Class (the "Class") are so numerous that joinder of all members is impracticable. Defendant has identified thousands of current and former employees, and beneficiaries and dependents thereof, whose PII may have been improperly accessed in the Data Breach, and the Class is apparently identifiable within Defendant's records.   Defendant advised Maine Attorney General Frey that the Data Breach affected 40,655 individuals.

74.    <u>Commonality</u>, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

    a.    Whether and to what extent Defendant had a duty to protect the PII of Plaintiff and Class Members;

    b.    Whether Defendant had duties not to disclose the PII of Plaintiff and Class Members to unauthorized third parties;

    c.    Whether Defendant had duties not to use the PII of Plaintiff and Class Members for non-business purposes;

    d.    Whether Defendant failed to adequately safeguard the PII of Plaintiff and Class Members;

    e.    Whether and when Defendant actually learned of the Data Breach;

    f.    Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

19

g.   Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their PII had been compromised;

h.   Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i.   Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.   Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiff and Class Members;

k.   Whether Plaintiff and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct;

l.   Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and

m.   Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

75.   Typicality, Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of those of other Class Members because all had their PII compromised as a result of the Data Breach, due to Defendant's misfeasance.

76.   Policies Generally Applicable to the Class: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole.  Defendant's policies challenged herein apply to and affect Class Members

uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

77.     Adequacy, Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that they have no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class.  Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages he has suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

78.     Superiority and Manageability, Fed. R. Civ. P. 23(b)(3): The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

79.     The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the

21

limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff were exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

80.     The litigation of the claims brought herein is manageable.  Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

81.     Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

82.     Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the PII of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

83.     Further, Defendant has acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

84.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues

include, but are not limited to:

    a.  Whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

    b.  Whether Defendant breached a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

    c.  Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

    d.  Whether an implied contract existed between Defendant on the one hand, and Plaintiff and Class Members on the other, and the terms of that implied contract;

    e.  Whether Defendant breached the implied contract;

    f.  Whether Defendant adequately and accurately informed Plaintiff and Class Members that their PII had been compromised;

    g.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    h.  Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiff and Class Members; and,

    i.  Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

## COUNT I
### Negligence
**(On Behalf of Plaintiff and the Nationwide Class)**

85.    Plaintiff and the Nationwide Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 84.

86.     As a condition of their employment with Defendant, Defendant's current and former employees were obligated to provide Defendant with PII of themselves and their beneficiaries and dependents, including their names, addresses, dates of birth, Social Security numbers, driver's license numbers, passport numbers, and/or bank account numbers.

87.     Plaintiff and the Nationwide Class entrusted their PII to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

88.     Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Nationwide Class could and would suffer if the PII were wrongfully disclosed.

89.     Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiff and the Nationwide Class involved an unreasonable risk of harm to Plaintiff and the Nationwide Class, even if the harm occurred through the criminal acts of a third party.

90.     Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that the PII of Plaintiff and the Nationwide Class in Defendant's possession was adequately secured and protected.

91.     Defendant also had a duty to exercise appropriate clearinghouse practices to remove former employees' PII, and that of their beneficiaries and dependents, it was no longer required to retain pursuant to regulations.

92.     Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of the PII of Plaintiff and the Nationwide Class.

24

93. Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and the Nationwide Class. That special relationship arose because Plaintiff and the Nationwide Class entrusted Defendant with their confidential PII, a necessary part of employment with the company.

94. Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Nationwide Class.

95. A breach of security, unauthorized access, and resulting injury to Plaintiff and the Nationwide Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

96. Plaintiff and the Nationwide Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PII of Plaintiff and the Nationwide Class, the critical importance of providing adequate security of that PII, and the necessity for encrypting PII stored on Defendant's systems.

97. Defendant's own conduct created a foreseeable risk of harm to Plaintiff and the Nationwide Class. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decisions not to comply with industry standards for the safekeeping of the PII of Plaintiff and the Nationwide Class, including basic encryption techniques freely available to Defendant.

98. Plaintiff and the Nationwide Class had no ability to protect their PII that was in, and possibly remains in, Defendant's possession.

99. Defendant was in a position to protect against the harm suffered by Plaintiff's and

the Nationwide Class as a result of the Data Breach.

100. Defendant had and continues to have a duty to adequately disclose that the PII of Plaintiff and the Nationwide Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Nationwide Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties.

101. Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the PII of Plaintiff and the Nationwide Class.

102. Defendant has admitted that the PII of Plaintiff and the Nationwide Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

103. Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and the Nationwide Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PII of Plaintiff and the Nationwide Class during the time the PII was within Defendant's possession or control.

104. Defendant improperly and inadequately safeguarded the PII of Plaintiff and the Nationwide Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

105. Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect the PII of Plaintiff and the Nationwide Class in the face of increased risk of theft.

106. Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and the Nationwide Class by failing to have appropriate procedures in place to detect and prevent dissemination of its current and former employees' PII, and that of their beneficiaries and

dependents.

107.    Defendant breached its duty to exercise appropriate clearinghouse practices by failing to remove former employees' PII, and that of their beneficiaries and dependents, it was no longer required to retain pursuant to regulations.

108.    Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and the Nationwide Class the existence and scope of the Data Breach.

109.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Nationwide Class, the PII of Plaintiff and the Nationwide Class would not have been compromised.

110.    There is a close causal connection between Defendant's failure to implement security measures to protect the PII of Plaintiff and the Nationwide Class and the harm, or risk of imminent harm, suffered by Plaintiff's and the Nationwide Class.  The PII of Plaintiff and the Nationwide Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

111.    Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

112.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein.

Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Nationwide Class.

113.     Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se*.

114.     Plaintiff and the Nationwide Class are within the class of persons that the FTC Act was intended to protect.

115.     The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Nationwide Class.

116.     As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Nationwide Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of Plaintiff and the Nationwide Class; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact

28

of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Nationwide Class.

117.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Nationwide Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

118.    Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Nationwide Class have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

119.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Nationwide Class are entitled to recover actual, consequential, and nominal damages.

## COUNT II
### Breach of Implied Contract
### (On Behalf of Plaintiff and the Nationwide Class)

120.    Plaintiff and the Nationwide Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 84.

121.    Defendant required Plaintiff and the Nationwide Class to provide PII of themselves and their beneficiaries and dependents, including their names, addresses, dates of birth, Social Security numbers, driver's license numbers, passport numbers, and/or bank account numbers.

122.    As a condition of employment with Defendant, Plaintiff and the Nationwide Class provided PII of themselves and their beneficiaries and dependents. In so doing, Plaintiff and the

29

Nationwide Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Nationwide Class if the PII was potentially or actually compromised or stolen.

123.    Plaintiff and the Nationwide Class fully performed their obligations under the implied contracts with Defendant.

124.    Defendant breached the implied contracts it made with Plaintiff and the Nationwide Class by failing to safeguard and protect the PII and by failing to provide timely and accurate notice to them that personal and financial information, along with the personal information of their beneficiaries and dependents, was compromised as a result of the data breach.

125.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Nationwide Class have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

126.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Nationwide Class are entitled to recover actual, consequential, and nominal damages.

## COUNT III
## INVASION OF PRIVACY
### (On Behalf of Plaintiff and the Nationwide Class)

127.    Plaintiff and the Nationwide Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 84.

128.    Plaintiff and the Nationwide Class had a legitimate expectation of privacy to their PII and were entitled to the protection of this information against disclosure to unauthorized third parties.

129.    Defendant owed a duty to its current and former employees and their beneficiaries and dependents, including Plaintiff and the Nationwide Class, to keep their PII contained as a part thereof, confidential.

130.    Defendant failed to protect and released to unknown and unauthorized third parties the PII of Plaintiff and the Nationwide Class.

131.    By knowingly operating with inadequate and insufficient information security practices, Defendant willingly allowed unauthorized and unknown third parties access to and examination of the PII of Plaintiff and the Nationwide Class, by way of Defendant's failure to protect the PII.

132.    The unauthorized release to, custody of, and examination by unauthorized third parties of the PII of Plaintiff and the Nationwide Class is highly offensive to a reasonable person.

133.    The intrusion was into a place or thing, which was private and is entitled to be private.  Plaintiff and the Nationwide Class disclosed their PII to Defendant as part of the current and former employees' employment with Defendant, but privately with an intention that the PII would be kept confidential and would be protected from unauthorized disclosure. Plaintiff and the Nationwide Class were reasonable in their belief that such information would be kept private and

31

would not be disclosed without their authorization.

134.    The Data Breach at the hands of Defendant constitutes an intentional interference with Plaintiff's and the Nationwide Class's interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

135.    Defendant acted with a knowing state of mind when it permitted the Data Breach to occur because it was with actual knowledge that its information security practices were inadequate and insufficient.

136.    Because Defendant acted with this knowing state of mind, it had notice and knew the inadequate and insufficient information security practices would cause injury and harm to Plaintiff and the Nationwide Class.

137.    As a proximate result of the above acts and omissions of Defendant, the PII of Plaintiff and the Nationwide Class was disclosed to third parties without authorization, causing Plaintiff and the Nationwide Class to suffer damages.

138.    Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Nationwide Class in that the PII maintained by Defendant can be viewed, distributed, and used by unauthorized persons for years to come. Plaintiff and the Nationwide Class have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and the Nationwide Class.

139.    As a direct and proximate result of Defendant's invasion of privacy, Plaintiff and the Nationwide Class are entitled to recover actual, consequential, and nominal damages.

## COUNT IV
## BREACH OF CONFIDENCE
### (On Behalf of Plaintiff and the Nationwide Class)

140.    Plaintiff and the Nationwide Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 84.

141.    At all times during Plaintiff's and the Nationwide Class's interactions with Defendant, Defendant was fully aware of the confidential and sensitive nature of Plaintiff's and the Nationwide Class's PII that Plaintiff and the Nationwide Class employed by Defendant provided to Defendant.

142.    As alleged herein and above, Defendant's relationship with Plaintiff and the Nationwide Class was governed by terms and expectations that Plaintiff's and the Nationwide Class's PII would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

143.    Plaintiff and the Nationwide Class employed by Defendant provided Plaintiff's and the Nationwide Class's PII to Defendant with the explicit and implicit understandings that Defendant would protect and not permit the PII to be disseminated to any unauthorized third parties.

144.    Plaintiff and the Nationwide Class employed by Defendant also provided Plaintiff's and the Nationwide Class's PII to Defendant with the explicit and implicit understandings that Defendant would take precautions to protect that PII from unauthorized disclosure.

145.    Defendant voluntarily received in confidence Plaintiff's and the Nationwide Class's PII with the understanding that PII would not be disclosed or disseminated to the public or any unauthorized third parties.

33

146. Due to Defendant's failure to prevent and avoid the Data Breach from occurring, Plaintiff's and the Nationwide Class's PII was disclosed and misappropriated to unauthorized third parties beyond Plaintiff's and the Nationwide Class's confidence, and without their express permission.

147. As a direct and proximate cause of Defendant's actions and/or omissions, Plaintiff and the Nationwide Class have suffered damages.

148. But for Defendant's disclosure of Plaintiff's and the Nationwide Class's PII in violation of the parties' understanding of confidence, their PII would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties. Defendant's Data Breach was the direct and legal cause of the theft of Plaintiff'' and the Nationwide Class's PII as well as the resulting damages.

149. The injury and harm Plaintiff and the Nationwide Class suffered was the reasonably foreseeable result of Defendant's unauthorized disclosure of Plaintiff's and the Nationwide Class's PII. Defendant knew or should have known its methods of accepting and securing Plaintiff's and the Nationwide Class's PII was inadequate as it relates to, at the very least, securing servers and other equipment containing Plaintiff's and the Nationwide Class's PII.

150. As a direct and proximate result of Defendant's breach of its confidence with Plaintiff and the Nationwide Class, Plaintiff and the Nationwide Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences

34

of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of current and former employees and their beneficiaries and dependents; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Nationwide Class.

151.    As a direct and proximate result of Defendant's breaches of confidence, Plaintiff and the Nationwide Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

152.    As a direct and proximate result of Defendant's breaches of confidence, Plaintiff and the Nationwide Class are entitled to recover actual, consequential, and nominal damages.

**COUNT V**
**Violation of California's Consumer Privacy Act**
**Cal. Civ. Code. § 1798.150**
**(On behalf of Plaintiff and the California Class)**

153.    Plaintiff and the California Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 84.

154.    Defendant violated section 1798.150(a) of the California Consumer Privacy Act ("CCPA") by failing to prevent Plaintiff's and the California Class's nonencrypted and nonredacted PII from unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violations of its duty to implement and maintain reasonable security procedures and

35

practices appropriate to the nature of the information to protect the PII of Plaintiff and the California Class.

155.    As a direct and proximate result of Defendant's acts, Plaintiff's and the California Class's PII was subjected to unauthorized access and exfiltration, theft, or disclosure through Defendant's computer system.

156.    As a direct and proximate result of Defendant's acts, Plaintiff and the California Class were injured and lost money or property, including but not limited to the loss of the California Class's legally protected interest in the confidentiality and privacy of their PII, nominal damages, and additional losses as described above.

157.    Defendant knew or should have known that their computer systems and data security practices were inadequate to safeguard the California Class's PII and that the risk of a data breach or theft was highly likely.  Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information of Plaintiff and the California Class.

158.    Defendant is organized or operated for the profit or financial benefit of their shareholders.  Defendant collected Plaintiff's and the California Class's PII as defined in Cal. Civ. Code § 1798.140.

159.    Defendant (a) has a gross annual revenue of over $25 million and (b) buys, receives, or sells the personal information of 50,000 or more California residents, households, or devices.

160.    At this time, Plaintiff and the California Class seek only actual pecuniary damages suffered as a result of Defendant's violations of the CCPA, injunctive and declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and any other relief the court deems proper.

36

161.    On November 11, 2021, Plaintiff separately provided written notice to Defendant identifying the specific provisions of this title he alleges it has violated. If within 30 days of Plaintiff's written notice to Defendant it fails to "actually cure" its violations of Cal. Civ. Code § 1798.150(a) and provide "an express written statement that the violations have been cured and that no further violations shall occur," Plaintiff will amend this complaint to also seek the greater of statutory damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater.  See Cal. Civ. Code § 1798.150(b).

## COUNT VI
### California's Unfair Competition Law
### Cal. Bus. & Prof. Code § 17200, *et seq.*—Unlawful Business Practices
### (On behalf of Plaintiff and the California Class)

162.    Plaintiff and the California Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 84.

163.    Defendant has violated Cal. Bus. and Prof. Code § 17200, *et seq.*, by engaging in unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading advertising that constitute acts of "unfair competition" as defined in Cal. Bus. Prof. Code § 17200 with respect to the services provided to the California Class.

164.    Defendant engaged in unlawful acts and practices with respect to their services by establishing the sub-standard security practices and procedures described herein; by soliciting and collecting Plaintiff's and the California Class's PII with knowledge that the information would not be adequately protected; and by storing Plaintiff's and the California Class's PII in an unsecure electronic environment in violation of California's data breach statute, Cal. Civ. Code § 1798.81.5, which requires Defendant to implement and maintain reasonable security procedures and practices to safeguard the PII of Plaintiff and the California Class.  Defendant also violated: the California

Consumer Privacy Act, Cal. Civ. Code § 1798.100, *et seq*. and the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.; and also the California Financial Information Privacy Act, California Financial Code § 4052.5; and Article 1, § 1 of the California Constitution.

165.    In addition, Defendant engaged in unlawful acts and practices by failing to disclose the data breach to the California Class in a timely and accurate manner, contrary to the duties imposed by Cal. Civ. Code § 1798.82. To date, Defendant still has not provided such information to Plaintiff and the California Class.

166.    As a direct and proximate result of Defendant's unlawful practices and acts, Plaintiff and the California Class were injured and lost money or property, including but not limited to the value of the employment received by Defendant for the services, the loss of the California Class's legally protected interest in the confidentiality and privacy of their PII, nominal damages, and additional losses as described above.

167.    Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard Plaintiff's and the California Class's PII and that the risk of a data breach or theft was highly likely. Defendant's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of Plaintiff and the California Class.

168.    Plaintiff and the California Class seek relief under Cal. Bus. & Prof. Code § 17200, *et seq*., including, but not limited to, restitution to Plaintiff and the California Class of money or property that Defendant may have acquired by means of its unlawful, and unfair business practices, restitutionary disgorgement of all profits accruing to Defendant because of its unlawful and unfair business practices, declaratory relief, attorneys' fees and costs, and injunctive or other equitable relief.

38

**California's Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq.*—Unfair Business Practices**
**(On behalf of Plaintiff and the California Class)**

169.     Plaintiff and the California Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 84.

170.     Defendant engaged in unfair acts and practices by establishing the sub-standard security practices and procedures described herein; by soliciting and collecting Plaintiff's and the California Class's PII with knowledge that the information would not be adequately protected; and by storing Plaintiff's and the California Class's PII in an unsecure electronic environment. These unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and the California Class.  They were likely to deceive the public into believing their PII was securely stored when it was not. The harm these practices caused to Plaintiff and the California Class outweighed their utility, if any.

171.     Defendant engaged in unfair acts and practices with respect to the provision of services by failing to take proper action following the data breach to enact adequate privacy and security measures and protect Plaintiff's and the California Class's PII from further unauthorized disclosure, release, data breaches, and theft. These unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and the California Class. They were likely to deceive the public into believing their PII was securely stored when it was not. The harm these practices caused to Plaintiff and the California Class outweighed their utility, if any.

172.     As a direct and proximate result of Defendant's acts of unfair practices, Plaintiff and the California Class were injured and lost money or property, including but not limited to the value of the employment received by Defendant for the services, the loss of Plaintiff's and the

39

California Class's legally protected interest in the confidentiality and privacy of their PII, nominal damages, and additional losses as described above.

173.     Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard Plaintiff's and the California Class's PII and that the risk of a data breach or theft was highly likely. Defendant's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and the California Class.

174.     Plaintiff and the California Class seek relief under Cal. Bus. & Prof. Code § 17200, *et seq*., including, but not limited to, restitution to Plaintiff and the California Class of money or property that Defendant may have acquired by means of its unfair business practices, restitutionary disgorgement of all profits accruing to Defendant because of its unfair business practices, declaratory relief, attorneys' fees and costs, and injunctive or other equitable relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and Class Members, request judgment against Defendant and that the Court grant the following:

A.     An Order certifying the Nationwide Class, the Employees Class, and the California Class and appointing Plaintiff and his Counsel to represent each such Class;

B.     Equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII of Plaintiff and Class Members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiff and Class Members;

C.     Injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class

Members, including but not limited to an order:

i. prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii. requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

iii. requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv. requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiff and Class Members;

v. prohibiting Defendant from maintaining the PII of Plaintiff and Class Members on a cloud-based database;

vi. requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii. requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii. requiring Defendant to audit, test, and train its security personnel regarding any

41

new or modified procedures;

ix.    requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

x.    requiring Defendant to conduct regular database scanning and securing checks;

xi.    requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xii.    requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.    requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiv.    requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and

42

assess whether monitoring tools are appropriately configured, tested, and updated;

    xv.   requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

    xvi.   requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D.    An award of damages, including actual, consequential, and nominal damages, as allowed by law in an amount to be determined;

E.    An award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.    Prejudgment interest on all amounts awarded; and

G.    Such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands that this matter be tried before a jury.

Date: November 22, 2021

                          Respectfully submitted,

                          ***/s/ Micah S. Adkins***
                          Micah S. Adkins
                          TN BAR NO. 036451

**THE ADKINS FIRM, P.C.**
1025 Westhaven Blvd., Suite 220
Franklin, Tennessee 37064
T:  (615) 370.9659
F:  (205) 208.9632
E:  MicahAdkins@ItsYourCreditReport.com

Jean S. Martin*
Francesca Kester*
**MORGAN & MORGAN COMPLEX
LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 559-4908
jeanmartin@forthepeople.com
fkester@forthepeople.com
*ATTORNEYS FOR PLAINTIFF
AND THE PROPOSED CLASS*

*pro hac vice applications to be submitted*

44